**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

2017 JUL 19  P 3: 33

| | |
|---|---|
| **ASHLEY HALL,** ) | |
| ) | DEBRA P. HACKETT, CLK |
| **Plaintiff,** ) | U.S. DISTRICT COURT |
| ) | MIDDLE DISTRICT ALA |
| ) | **CIVIL ACTION NO.:** |
| **v.** ) | 2:17-CV-484-CSC |
| ) | |
| **HYUNDAI STEEL AMERICA** ) | |
| **INC.,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Defendant.** ) | |

## COMPLAINT

## JURISDICTION

1. This Complaint seeks legal and equitable relief to redress Defendants'
unlawful violations of Plaintiff Ashley Hall's rights secured by:

   a. Civil Rights Acts of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et
   seq.*, as amended by the Civil Rights Act of 1991;

   b. Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended; and

   c. The laws of the State of Alabama.

2. Jurisdiction is proper pursuant to the following:

   a. 28 U.S.C. §§ 1331, 1343(a)(3) and 1367;

   b. Title VII, 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

3.    Plaintiff Ashley Hall (hereinafter "Ms. Hall" or "Hall") is an African-American female.  Ms. Hall is a resident of Crenshaw County, Alabama and is employed by Hyundai Steel America Company as an Administrative Specialist for Quality.  Ms. Hall has worked for Hyundai since March 2015 at its Greenville, Alabama location.

4.    Defendant Hyundai Steel America Corporation ("HYSCO America") is a foreign corporation and subsidiary of Hyundai Steel Company ("HYSCO"), a foreign corporation.  HYSCO America is located in Greenville, Alabama.  HYSCO America is an automotive supplier that supplies steel products used in the manufacture of vehicles by Hyundai Motor Manufacturing Company ("HMMA") in Montgomery, Alabama.  HYSCO America currently employs more than 500 people at its manufacturing facility.

## VENUE

5.    Venue lies within the Middle District of Alabama under 28 U.S.C. § 1391.

## NATURE OF ACTION

6.    Plaintiff Ms. Hall alleges that Defendant HYSCO America engaged in intentional unlawful employment practices including discrimination, harassment and

2

retaliation based on Ms. Hall's race and gender; negligent and wanton hiring, training, supervision and retention; and invasion of privacy. This action seeks to redress those grievances resulting from the actions of Defendant, its agents, servants, and employees and for a permanent injunction restraining Defendant from discriminating against Ms. Hall and those similarly situated on account of gender, race, and retaliation.

7.     Ms. Hall seeks make-whole relief including back pay, front pay, compensatory damages, punitive damages, costs, interest, and attorneys' fees.

## ADMINISTRATIVE PROCEDURES

8.     On August 29, 2016, within 180 days of learning of the acts of discrimination of which she complains, Ms. Hall filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging that while working for Defendant she experienced unlawful discrimination based on her race, color and gender in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and experienced unlawful retaliation in violation of Title VII. A copy is attached as Exhibit A.

9.     On April 21, 2017, the EEOC issued a Notice of Right to Sue to Ms. Hall. Ms. Hall received the notice on April 25, 2017. A copy is attached as Exhibit B.

10.     Ms. Hall has met all prerequisites for bringing this action.

## STATEMENT OF FACTS

11.     On or about March 31, 2015, Ashley Hall, an African-American female, began working for HYSCO America as an Administrative Specialist for Quality.

12.     Ms. Hall's immediate supervisor was Quality Manager, Mr. Jin Kuk Choi ("Choi").

13.     In May 2015, shortly after Ms. Hall started employment, Choi began harassing and discriminating against Ms. Hall.

14.     The discrimination and harassment would consist of Choi yelling and screaming at Ms. Hall and one of her female co-workers, Rosa Owens, a 62 year-old African-American woman.

15.     On August 22, 2016, Ms. Hall and Ms. Owens were called into a meeting with Mr. Choi. During the meeting he became upset and began banging his fists on the table, throwing markers at them so as to hit their bodies, and yelling demeaning behavior directed at them.

16.     Ms. Hall and Ms. Owens attempted to escape the room and leave the meeting with Mr. Choi when Mr. Choi's hostility escalated.

17.     The other manager who was present would not stop the meeting. Mr. Choi would not let the women leave and told them to sit down. In fear, the women

4

sat until Mr. Choi allowed them to leave.

18.     Ms. Hall immediately went to Human Resources to complain about Choi's demeaning conduct and actions.

19.     Later that day, Human Resources instructed Ms. Hall that, for her own personal safety, she should clock out and go home.

20.     Ms. Hall called in to work for four (4) days and was told each day that she should not come back for her own personal safety. Ms. Hall was not paid for those days she was told to be off work.

21.     Quality Manager Choi would assign Ms. Hall large amounts of work and place unreasonable time demands that she was required to complete the work or be terminated.

22.     When Ms. Hall completed the assigned work, Choi would take the work and, in front of Ms. Hall, either tear it up or ball it up and throw it in the trash can. He would then tell her to do the same assignment over again.

23.     Choi would create demeaning and demoralizing work for Ms. Hall to complete. He would tell her to draw a picture of the plant, identifying by number every coil in the plant, even though all of this information was already readily available.

24.     After Ms. Hall completed the drawing task, Choi would take the work,

5

ball it up, and throw it in the trash in Ms. Hall's presence. Choi never even looked at Hall's work product.

25.     Choi told Ms. Hall she was not going to do well and that she would never advance or be promoted with the company. Choi refused to allow Ms. Hall to talk or give her thoughts or opinions about work assignments.

26.     Choi told Ms. Hall that she had no opinions and could only listen to him.

27.     Choi's tone and demeanor when he spoke to Ms. Hall were demeaning and derogatory and unlike how he talked to male employees or employees that were not African-American.

28.     Choi told Ms. Hall that she was prohibited from contacting Human Resources. Choi ordered Hall to direct any complaints to him, and he would address the complaints or take them to the president.

29.     Choi would threaten Ms. Hall's job on a daily basis.

30.     Choi would demean Ms. Hall in front of her co-workers by yelling and screaming at her as if she had no worth. Other times he would yell and scream at Ms. Hall in front of people who work elsewhere in the plant.

31.     Choi would not look at Ms. Hall when she would ask questions and would spit in the trash can while she tried to talk to him.

6

32.    Ms. Hall understood Mr. Choi's spitting when she talked as demeaning and degrading and to signify that Choi did not value anything she was saying or even value her as a human.

33.    Ms. Hall understood that Choi's spitting while she tried talking was a demeaning tactic by Choi to further demoralize her.

34.    Mr. Choi would refuse Ms. Hall's assistance or clarification. Choi told Ms. Hall that she was to do all projects on her own, unlike male co-workers who were allowed to collaborate and talk with one another.

35.    If Ms. Hall was seen asking for help, Choi would start yelling and ridiculing Ms. Hall in front of her male co-workers.

36.    Mr. Choi's harassment and discrimination directed to Ms. Hall steadily escalated to the point that it was difficult for Ms. Hall to report to work. While at work, she was constantly on guard, trying to deflect Mr. Choi's next round of assaults and insults.

37.    Herb Kermick was Ms. Hall's co-worker. Mr. Kermick is a Caucasian male.

38.    Choi did not create mindless and demeaning tasks for Mr. Kermick, nor did he yell and demean Mr. Kermick repetitively.

39.    Mr. Kermick is not treated in the same adverse and hostile manner as

Ms. Hall.  Mr. Choi would assign Mr. Kermick minimal work, while piling work on Ms. Hall.

40.     If Mr. Kermick attempted to assist Ms. Hall, he was ordered by Choi not to assist her.

41.     Mr. Choi's interaction with male employees in the plant is not adverse or hostile like the treatment Ms. Hall and Ms. Owens receive from Mr. Choi.

42.     Other women assigned to work under Mr. Choi have resigned or moved away from him.

43.     Brittany Henderson, an African-American female, resigned in March 2016 due to Mr. Choi's ongoing harassment of her.

44.     Naomi Powell, an African-American female, has also complained to Human Resources about being harassed by Mr. Choi and asked to be moved to another area due to Mr. Choi's harassment and demeaning conduct toward female employees.

45.     Ms. Hall complained approximately ten (10) times to the Human Resource Department for their assistance due to the constant harassment and discrimination of Quality Manager, Mr. Jin Kuk Choi.

46.     Ms. Hall also complained to the President of HYSCO America, Mr. B.B. Lee and the Chief Financial Officer about Choi's constant harassment of her and

other minority females.

47.     Neither Mr. Lee nor Human Resources took Ms. Hall's complaints seriously and refused to investigate or correct the harassment.

48.     After Ms. Hall complained to Human Resources, Choi would taunt her with her complaints and repeat what he had been told that she said.

49.     Ms. Hall learned that after complaining to Human Resources, her complaints were reported to the president of the company, who would then directly report her complaints back to Mr. Choi.

50.     As a result of complaining about discrimination and harassment, Mr. Choi would discipline Ms. Hall and chastise her.  Choi's harassment of Hall escalated in retaliation.

51.     As a result, Ms. Hall felt that there was no one to protect her from Mr. Choi.  Indeed, Human Resources told her that their hands were tied, that they could do nothing with Mr. Choi, and that she should either tolerate the discrimination and harassment or look for help outside the plant.

52.     Mr. Choi has repeatedly threatened Ms. Hall with write-ups, disciplinary action and termination.  Mr. Choi told Ms. Hall that he would write her up for no reason.

53.     Ms. Hall has asked to be reassigned and moved from Mr. Choi, but her

requests have been ignored.

54.  Ms. Hall was forced to continue to work in a harassing and discriminatory environment due to her gender and race.

55.  Ms. Hall's work environment was so hostile and demeaning that she would cry at work and worry that she would be terminated.  Hall was threatened by Mr. Choi and was constantly fearful that he would physically harm her.

## COUNT ONE

### TITLE VII AND SECTION 1981  - RACE DISCRIMINATION, HARASSMENT AND RETALIATION

56.  Ms. Hall realleges and incorporates by reference paragraphs 11-55 with the same force and effect as if fully set forth in specific detail herein below.

57.  This is a claim against Defendant to redress the unlawful employment practices of racial discrimination, harassment, and retaliation protected by Title VII and 42 U.S.C. § 1981, as amended.

58.  This is a claim against Defendant for the intentional and illegal discrimination of Ms. Hall because of her race.

59.  Ms. Hall is an African-American female and a member of a protected minority class.

60.  Ms. Hall was at all times qualified to perform her job duties as a

10

Administrative Specialist in Quality but was harassed and treated differently due to her race.

61.   Hyundai and its Quality Manager Mr. Jin Kuk Choi treated Ms. Hall adversely in the terms and conditions of her employment as compared to Ms. Hall's Caucasian male coworkers.  Hyundai was motivated by Ms. Hall's race to treat her less favorably and deny her equal treatment, pay, benefits and terms of employment. Ms. Hall voiced complaints about the racial discrimination and harassment to the human resource managers and was ignored and told to learn to work with Mr. Choi and to try and understand the cultural differences.  Ms. Hall's complaints were not investigated and she was ignored.  As a result, Ms. Hall was forced to continue working in a hostile environment based on her race.

62.   Ms. Hall's work environment was racially hostile and harassing. Hyundai required Ms. Hall to work in a racially hostile environment filled with intimidation and ridicule by her supervisor.  Ms. Hall complained about the race discrimination and suffered retaliation that included unfair discipline and further harassment and intimidation.  Hyundai failed to follow its policy to prevent and prohibit race and gender discrimination in the workplace.

63.   As a proximate result of Defendant's unlawful discrimination, harassment and retaliation, Ms. Hall has suffered financial and economic loss,

11

humiliation, emotional distress, and trauma.

64. Ms. Hall seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT TWO

### TITLE VII - SEX DISCRIMINATION AND HARASSMENT

65. Ms. Hall realleges and incorporates by reference paragraphs 11-55 Plaintiff re-alleges the facts above as if fully set forth herein.

66. Ms. Hall is an African-American female and a member of a protected minority class at all times relevant to this claim and her employment with HYSCO America.

67. Ms. Hall suffered from severe or pervasive discrimination and harassment based on gender during her employment with HYSCO America and under the direct supervision of Quality Manager Mr. Jin Kuk Choi.

68. Ms. Hall endured regular, offensive, derogatory, gender-related comments during her employment.

69. Defendant treated male employees more favorably in the terms, conditions, and pay during their employment. Male employees were not demeaned or degraded by Quality Manager Mr. Jin Kuk Choi.

12

70.     Defendants failed to employ policies, procedures, and training sufficient to prohibit sex discrimination and harassment.

71.     As a proximate result of Defendant's unlawful discrimination, harassment and retaliation, Ms. Hall has suffered financial and economic loss, humiliation, emotional distress, and trauma.

72.     Ms. Hall seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT THREE

## NEGLIGENT AND WANTON HIRING, TRAINING, SUPERVISION AND RETENTION

73.     Ms. Hall realleges and incorporates by reference paragraphs 11-55 with the same force and effect as if fully set forth in specific detail herein below.

74.     This is a claim arising under the laws of the State of Alabama to redress the negligent and wanton hiring, training, supervision and retention of Defendant's employees, specifically Quality Manager Jin Kuk Choi, the Human Resource Department of Defendant, and others responsible for permitting and perpetuating Hall's discrimination, harassment, and retaliation.

75.     Defendant had a duty to provide a reasonably safe, non-hostile and non-

13

discriminatory work environment to Ms. Hall and other employees who were African-American and female. Defendant had actual notice of the actions complained of by Ms. Hall.

76. Defendant, having such knowledge, negligently and wantonly failed to train and discipline its manager who actively discriminated, harassed, retaliated and conspired against Ms. Hall, namely Quality Manager Jin Kuk Choi, and failed to protect Ms. Hall from further injury by Choi. Defendant had numerous complaints by Hall and other African-American females, but refused to discipline or train Choi to prevent further harm to Ms. Hall and other minority employees.

77. Defendant failed to administer its own policies against harassment and discrimination which created a hostile working environment for Ms. Hall. Defendant failed to regularly and clearly communicate such policies to its managers, namely Quality Manager Mr. Jin Kuk Choi and other agents and employees of Defendant, including the Human Resource Department of Defendant.

78. Ms. Hall's working conditions created by these managers and Quality Manager Choi were adverse, hostile, and intended to cause Ms. Hall to resign or be set up for termination. These actions were intended to cause Ms. Hall financial, physical, and emotional harm so that she would resign, because Quality Manager Choi perceived Ms. Hall to be a subservient employee based on her race and gender.

14

79.     As a proximate result of the Defendant's unlawful and unconstitutional conduct, Ms. Hall suffered the following injuries: different terms and conditions of employment than other employees, severe emotional distress, physical injury, pain and suffering, humiliation, mental anguish, trauma and embarrassment, and financial loss.

80.     Ms. Hall seeks declaratory and injunctive relief, an award of lost employment benefits and wages, compensatory and punitive damages, loss of career opportunity, damages for mental anguish, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT FOUR

## INVASION OF PRIVACY

81.     Ms. Hall realleges and incorporates by reference paragraphs 11-55 with the same force and effect as if fully set forth in specific detail herein below.

82.     This is a claim against Defendant for the invasion of Ms. Hall's right to privacy under the laws of the State of Alabama.

83.     Defendant invaded Ms. Hall's personal and emotional sanctum by harassing and discriminating against her due to her gender and race, by placing her in a false and unfavorable light, and by intruding into her physical solitude by having her defend herself against an abusive manager. When Ms. Hall complained about the

15

discriminatory treatment, she was isolated and placed in a false light in the public eye. Publicity was brought to Ms. Hall's private information, and Defendant intruded into Ms. Hall's physical solitude and seclusion by having her defend herself against these false accusations.

84.     Defendant's conduct proximately caused Ms. Hall to suffer embarrassment, humiliation, physical injury, pain and suffering, loss of reputation, loss of pay and benefits, and mental anguish for which she claims damages.

85.     Ms. Hall seeks declaratory and injunctive relief, reinstatement, award of compensatory and punitive damages, mental anguish, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

**WHEREFORE**, Plaintiff Ashley Hall respectfully requests the following relief:

A.     Grant of a permanent injunction enjoining Defendant, Quality Manager Mr. Jin Kuk Choi, and all other managers, directors, officers, successors, assigns, and all persons in active concert or participation therewith, from engaging further in discriminatory treatment on the basis of gender, race, and retaliation;

B.     Order Defendant to institute and carry out policies, practices, and programs which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of past and present unlawful employment

16

practices, including implementing a policy against gender and race discrimination and retaliation for engaging in protected activities and ordering Quality Manager, Mr. Jin Kuk Choi to counseling and training and/or be removed from the Greenville plant;

   C.     Order Defendant to make Ms. Hall whole by awarding any and all back pay, front pay, and any other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices;

   D.     Award Ms. Hall compensatory, punitive, and liquidated damages;

   E.     Award Ms. Hall costs, expenses, interest, and attorneys' fees; and,

   F.     Award such other and further relief this Court deems necessary and proper.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES**

                              Respectfully submitted,

                              _Sonya C. Edwards_
                              Alicia K. Haynes ASB-8237-E23A
                              Sonya C. Edwards ASB-8848-S73E
                              Attorneys for Plaintiff

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama 35226
Phone: (205) 879-0377
Fax: (205) 879-3572
E-mail: akhaynes@haynes-haynes.com
E-mail: scedwards@haynes-haynes.com

17

## PLEASE SERVE DEFENDANT BY CERTIFIED MAIL:

### DEFENDANT'S ADDRESS:

Hyundai Steel America, Inc.
c/o Marcel Debruge, Registered Agent
420 North Twentieth Street, Suite 3400
Birmingham, Alabama 35203